# INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION
International Arbitration Tribunal

---

In the Matter of the Arbitration between

Kevin Cochrane,

*Claimant*,

v.                                                            ICDR Case No. 01-14-0001-2566

Open Text Corporation; and
Open Text, Inc.,

*Respondents.*

---

# FINAL AWARD

I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement entered into by the above-named parties and dated December 5, 2012, and having been duly sworn, and having fully reviewed and considered the written documents submitted to me and the evidence presented at the hearing in this matter on February 11, 2015, at which the parties were accorded full opportunity to be heard, do hereby, AWARD, as follows:

## 1. Background

The dispute in this arbitration concerns whether, after Claimant Kevin Cochrane ("Cochrane") voluntarily terminated his employment, Respondents Open Text Corporation and its subsidiary Open Text, Inc. (collectively, "Open Text") were required to pay him Variable Compensation ("VC") under the terms of his Employment Agreement.

Cochrane maintains that he is entitled to the full measure of VC; Open Text has refused to pay him, offering a more modest severance payment instead. Issues presented in the briefs and at the hearing in Washington, D.C. were: (1) Cochrane's procedural compliance with the

1

Agreement's notice provision and its consequences; (2) Cochrane's entitlement to VC; and (3) if so entitled, the measure of damages, *i.e.*, how much VC Open Text owes him.

For reasons discussed below, I award Cochrane US$438,000.00 in Variable Compensation, plus pre-Award and post-Award interests, and all Arbitrator's and Administrator's costs and fees.

**2. Cochrane's Notice and Separation Date**

On April 14, 2014, Cochrane verbally and via email gave Open Text notice of his termination. Cochrane's Employment Agreement of December 5, 2012 ("Agreement") in para. 4(d) states that to voluntarily terminate, Cochrane was required to provide Open Text with notice "at least ninety (90) days in advance of the Date of Separation Date" which is defined in para. 5(b) as a date "not less than ninety (90) days after" his notice. Cochrane offered to remain on the job until his Separation Date. Cochrane and Manuel Sousa, the Senior Vice President of Global Human Resources for Open Text (and who executed Cochrane's Agreement), conferred in late April 2014 regarding Cochrane's departure.

On May 2, 2014, Sousa, after conferring with Open Text's legal department (February 11, 2015 testimony), confirmed to Cochrane that: (i) Cochrane's notice "satisfies the terms of the Employment Agreement" (May 2, 2014 letter); (ii) the Agreement "shall govern the obligations of the parties with respect to your Separation from Service" (*id.*); (iii) that July 14, 2014 was the "Separation Date" as defined in the Agreement (*id.*); and (iv) Cochrane was on "garden leave" until July 14, 2014, *i.e.*, he would continue to receive his regular salary and benefits (May 2, 2014 text message) until the Separation Date, which Open Text did. However, Sousa's May 2, 2014 letter offered to Cochrane "Accrued Payments" that differed from the terms of those under

the Agreement and were significantly less in value. Sousa's May 2, 2014 letter also requested that in exchange for this, Cochrane was to execute a General Release.

Cochrane refused to accept Open Text's May 2, 2014 offer. Under the terms of the Agreement's arbitration provision, this arbitration ensued. Cochrane seeks US$438,000.00 in VC (Claimant's Pre-Hearing Brief, para. 40). Open Text opposes, countering that Cochrane is at most entitled to a "bonus" of US$143,057.69 "if any" (Respondent's Pre-Hearing Brief p. 5.).

### 3. Entitlement

A. Open Text argued that Open Text's later-adopted Worldwide Incentive Compensation Policy dated July 01, 2013 ("WICP") and an Incentive Compensation Agreement ("ICA") of September 29, 2013, not Cochrane's earlier Agreement, govern the terms of his termination and separation compensation. The Arbitrator finds this argument unpersuasive. Among other reasons, this is an after-the-fact argument to disavow Open Text's contemporaneous confirmation that the Employment Agreement governs Cochrane's termination (Sousa letter, May 2, 2014). *See also* WICP, p. 2 of 14, Plan Participation: "Nothing in this plan shall be construed to create…a term contract between the Company and the participant…."

Coupled with this argument is Open Text's claim that the Tribunal has no authority to hear Cochrane's quantum, *i.e.*, damages calculations: the Tribunal may "decide only Claimant's entitlement to, but not quantum of any variable compensation payment." (Respondent's Pre-Hearing Brief, p.5). Accepting Open Text's contemporaneous conclusion that the Agreement – and its arbitration provision, para. 12) -- governs Cochrane's termination (Sousa letter, May 2, 2014), it follows that the Tribunal clearly has authority to determine both entitlement and quantum. (American Arbitration Association's Commercial Arbitration Rules - Rule R-7.)

B. The Agreement, at para. 6(a) (i) required Open Text to pay Cochrane as follows:

3

> "*Accrued Payments.* Within thirty (30) days following the Date of Separation from Service (w) any Base Salary earned by the Executive but not paid through the Date of Separation of Service...; (x) any Variable Compensation earned by the Executive for the fiscal year prior to the year in which the Date of Separation from Service has occurred but not yet paid prior to the Date of Service...."

Cochrane's Separation Date was July 14, 2014 (Sousa letter, May 2, 2014). The Tribunal rejects Open Text's assertion that this date was May 2, 2014, a date that Open Text, not Cochrane, determined was to be his last day in the office. "Mr. Cochrane's employment indisputably ended on May 2, 2014, the only relevant separation date under the terms of his contract." (Response, para. 5, last sentence). The Tribunal finds this assertion at best disingenuous.

VC is defined as follows:

> "In addition to the Base Salary, with respect to each fiscal year...during the Term, [Cochrane is] eligible to earn an annual bonus, based on the achievement of annual individual and Parent Corporation performance objectives established by the Board..."

The "fiscal year...during the Term" ended July 31, 2014. Thus, Cochrane is entitled to be paid VC through July 31, 2014, the end of the fiscal year.

### 4. Quantum

The parties were in agreement that at the beginning of each fiscal year, Open Text would issue: (i) a general WICP applicable to numerous high-level employees; and (ii) a specific ICA for each such employee.

For fiscal year 2014 (July 1, 2013 to June 30, 2014) Open Text issued Cochrane: (i) a WICP dated July 1, 2013 and (ii) an ICA dated September 29, 2013. While there is no specific provision in these documents or the Employment Agreement to cleanly provide for their incorporation by reference, the parties agreed that these two documents provided the terms and

formulae for determining a given employee's bonus, *i.e.* VC. Of the two documents, the ICA provides the specific formula for determining for Cochrane's VC:

1. His target compensation was set at $200,000.00

2. The elements of his VC were:

    45% (of US$200,000.00) from Open Text Worldwide Revenue = $90,000.00

    45% (of US$200,000.00) from Open Text Operating Income = $90,000.00

    10% (of US$200,000.00) from Board Objectives = $20,000.00

Based on the ICA and Open Text's publicly reported revenue (press release) as of the date Cochrane filed for arbitration (August 20, 2014), those figures and calculations were:

|  | Targets in Actual Plan Document | |
|---|---|---|
| Revenue (in millions) (45%) | Performance:<br>Target:<br>Attainment:<br>Bonus: | $1,613<br>$1,461.7<br>110%<br>$180,000 |
| Operating Income (in millions) (45%) | Performance:<br>Target:<br>Attainment:<br>Bonus: | $486<br>$434.7<br>112%<br>$198,000 |
| Board Objectives (10%) | Attainment:<br>Bonus: | 125%<br>$60,000 |
| Total Bonus |  | $438,000 |

The Tribunal found these figures and calculations to be based on credible evidence.

Open Text opposes, arguing instead that at most, Cochrane is entitled to US$143,057.69. (Respondent's Pre-Hearing Brief, p.5). The Tribunal rejects Open Text's version because: (i) Open Text offered no evidence to support its contention that the recent GXS Worldwide, Inc. ("GXS") acquisition caused an inflated value. While there was company-wide knowledge of the GXS acquisition, there was no evidence that Open Text for that very reason amended either the July 1, 2013 WICP or Cochrane's September 29, 2013 ICA; (ii) any other award would give

Cochrane more VC than was the norm for similarly situated executives in violation of the WICP. In this arbitration, Cochrane should not be denied full recovery, simply because others did not challenge their entitlement (if any) under their circumstances of termination, but (apparently alone) Mr. Cochrane did. (iii) Open Text offered no evidence that it revised the WICP or Cochrane's ICA on the basis of a recent SEC 10K filing.

5. **AWARD**

Accordingly, for the reasons stated above, I AWARD as follows:

1. Within thirty (30) days from the transmittal of this Final Award to the Parties, Respondents Open Text Corporation and Open Text, Inc., jointly and severally, shall pay Claimant Kevin Cochrane the sum of US$438,000.00 plus pre-Award interest beginning August 14, 2014 (VC is to be paid no later than 30 days after the Separation Date), and post-Award interest, both at a rate of six percent, D.C. Code § 28-3302(a).

2. The administrative fees and expenses of the International Centre for Dispute Resolution, totaling US$6,100.00, and the compensation and expenses of the Arbitrator, totaling US$16,913.74, are to be borne, jointly and severally, entirely by Respondents Open Text Corporation and Open Text, Inc. Therefore, Respondents Open Text Corporation and Open Text, Inc., jointly and severally, shall reimburse Claimant Kevin Cochrane the sum of US$14,556.87, representing that portion of said fees and expenses in excess of the apportioned costs previously incurred by Claimant Kevin Cochrane.

3. This Final Award is, after full and complete consideration, in full and complete settlement of any and all claims or offsets which were submitted or which could

have been submitted in this arbitration, any and all claims between the parties not expressly granted herein are hereby denied.

I hereby certify that, for the purposes of Article 1 of the New York Convention of 1958, on the Recognition and Enforcement of Foreign Arbitral Awards, this Final Award was made in Washington, D.C., United States of America.

10 March 20'5
Date

*William Karl Wilburn*
William Karl Wilburn

State of Maryland } SS:
County of Montgomery

I, William Karl Wilburn, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Final Award.

_10 March 2015_
Date

_William Karl Wilburn_
William Karl Wilburn

State of Maryland } SS:
County of Montgomery

On this 10th day of March, 2015, before me personally came and appeared William Karl Wilburn, to me known and known to me to be the individual described in and who executed the foregoing instrument and he acknowledged to me that he executed the same.

_Joyce Abichauer Amadi_
Notary Public

JOYCE ABICHAKER AMADI
Notary Public
Montgomery County
Maryland
My Commission Expires May 11, 2018

