1    COOLEY LLP
PATRICK GUNN (172258)

2    (pgunn@cooley.com)
101 California Street

3    5th Floor
San Francisco, CA  94111-5800

4    Telephone:    (415) 693-2000
Facsimile:    (415) 693-2222

5

6    CLEARY GOTTLIEB STEEN & HAMILTON LLP
JEFFREY ROSENTHAL (*pro hac vice*)

7    jrosenthal@cgsh.com
DARRYL STEIN (*pro hac vice*)

8    dstein@cgsh.com
One Liberty Plaza

9    New York, NY 10006
Telephone:    (212) 225-2000

10    Facsimile:    (212) 225-3999

11    Attorneys for Respondents
OPEN TEXT CORPORATION and

12    OPEN TEXT Inc.

13                    UNITED STATES DISTRICT COURT

14                    NORTHERN DISTRICT OF CALIFORNIA

15                      SAN FRANCISCO DIVISION

16

| | |
|---|---|
| 17  KEVIN COCHRANE, an individual, | Case No. 4:15-cv-01234-WHA |
| 18             Petitioner, | **NOTICE OF MOTION AND MOTION TO VACATE ARBITRATION AWARD;** |
| 19      v. | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| 20  OPEN TEXT CORPORATION, a Canadian corporation and OPEN TEXT INC., a | Date:       June 11, 2015 |
| 21  Delaware corporation, | Time:      8:00 a.m. |
| 22            Respondents. | Courtroom: 8 – 19th Floor<br>Judge:    Hon. William Alsup |
| 23 | Petition Filed:  March 30, 2015 |

24

25

26

27

28

1

**Table of Contents**

2

**Page**

3  NOTICE OF MOTION AND MOTION TO VACATE.................................................................. 1

4  STATEMENT OF ISSUES TO BE DECIDED ....................................................................... 1

   MEMORANDUM OF POINTS AND AUTHORITIES ............................................................ 1

5  I.       INTRODUCTION ........................................................................................................ 1

6  II.      FACTS ........................................................................................................................... 5

7  III.     ARGUMENT ................................................................................................................. 8

            A.       The Arbitrator Lacked Jurisdiction to Determine Quantum .................................. 8

8           B.       The Award Was "Completely Irrational" ............................................................. 11

9  IV.      CONCLUSION ............................................................................................................ 15

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

CASES

*BG Grp. Plc v. Rep. of Arg.*,
 134 S. Ct. 1198 (2014) ..................................................................................................4, 9

*Biller v. Toyota Motor Corp.*,
 668 F.3d 655 (9th Cir. 2012)..............................................................................................11

*Bosack v. Soward*,
 586 F.3d 1096 (9th Cir. 2009) ............................................................................................4

*Cortez Byrd Chips, Inc. v. Bill Harbert Const. Co.*,
 529 U.S. 193 (2000) ............................................................................................................4

*Fin. Network Inv. Corp. v. Karoon*,
 540 F. App'x 597 (9th Cir. 2013) .....................................................................................12

*First Options of Chi., Inc. v. Kaplan*,
 514 U.S. 938 (1995)........................................................................................................9, 10

*Granite Rock Co. v. Teasmsters*,
 561 U.S. 287 (2010)..........................................................................................................4, 9

*Kaplan v. First Options of Chi., Inc.*,
 19 F.3d 1503 (3d Cir. 1994), *aff'd*, 514 U.S. 938 (1995) ...........................................11

*Kyocera Corp. v. Prudential-Bache*,
 341 F.3d 987 (9th Cir. 2003)..............................................................................................11

*Lagstein v. Certain Underwriters at Lloyd's, London*,
 607 F.3d 634 (9th Cir. 2010).........................................................................................4, 12

*Pace v. Honolulu Disposal Servs.*,
 227 F.3d 1150 (9th Cir. 2000)............................................................................................13

*Steelworkers v. Warrior & Gulf Nav. Co.*,
 363 U.S. 574 (1960)............................................................................................................9

STATUTES

9 U.S.C.
 § 10.........................................................................................................................4, 11, 15
 § 10(a) ................................................................................................................................4
 § 10(a)(4)............................................................................................................................1

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii.

**MOTION TO VACATE ARBITRATION AWARD**
**CASE NO. 4:15-CV-01234-WHA**

1

**TABLE OF AUTHORITIES**
**(continued)**

2

**Page**

3  **Other Authorities**

4  Fed. R. Evid. 408(a)(2) ...................................................................................................13

5  Federal Rules of Civil Procedure
Rule 7 ......................................................................................................................1

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii.

**MOTION TO VACATE ARBITRATION AWARD**
**CASE NO. 4:15-CV-01234-WHA**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION TO VACATE**

To All Parties and Their Attorneys of Record:

PLEASE TAKE NOTICE THAT on June 11, 2015 at 8:00 a.m. or as soon thereafter as the matter may be heard, in Courtroom 8 on the 19th floor of the United States District Court for the Northern District of California, United States Courthouse, located at 450 Golden Gate Avenue, San Francisco, California, Honorable William Alsup presiding, Respondents Open Text Corporation and Open Text Inc. (collectively, "Respondents" or "Open Text") will, and hereby do, move for an order vacating the arbitration award Kevin Cochrane (the "Petitioner," and together with Respondents, the "Parties") seeks to confirm in this proceeding (the "Award").

This motion is made pursuant to Rule 7 of the Federal Rules of Civil Procedure on the grounds that the Award should be vacated because the arbitrator "exceeded [his] powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4) (Fed. Arbitration Act § 10(a)(4)).

This motion is based on this Notice of Motion and Memorandum of Points and Authorities, the Declaration of Darryl Stein in Support of Respondents' Motion to Vacate Arbitration Award (the "Stein Declaration"), on the pleadings and papers on file in this action, and on such further evidence and argument as may be submitted at or before the hearing.

**STATEMENT OF ISSUES TO BE DECIDED**

Whether the Award should be vacated because the Parties' fully-integrated agreement provided that disputes regarding the amount of Petitioner's variable compensation were reserved for "final and binding" decision by Respondents' Compensation Review Board, rather than heard by an arbitrator pursuant to an arbitration clause in an earlier, superseded agreement?

Whether the Award should be vacated as "completely irrational" because it disregarded the Parties' fully-integrated agreement and instead rested upon a prior agreement that the Parties expressly superseded?

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1.

MOTION TO VACATE ARBITRATION AWARD
CASE NO. 4:15-CV-01234-WHA

1

### MEMORANDUM OF POINTS AND AUTHORITIES

2

**I.    INTRODUCTION**

3

4

5

This case involves an irrational arbitration award in which the arbitrator not only exceeded his jurisdiction, but he did so by rejecting Respondents' unrebutted jurisdictional challenge.  It should be vacated.

6

7

The Parties' underlying dispute should have been governed by bedrock principles of contract law:

8

9

- Must an adjudicator honor a subsequent contract – divesting him of jurisdiction – which the Parties agreed "supersedes" all prior agreements?

10

11

- Can an adjudicator find that an unsigned, rejected settlement offer waived contractual rights (including the right to a different dispute resolution mechanism) when the plain language of the contract mandates that no waiver can be effective unless signed?

12

13

14

- Is there any rational basis for an adjudicator's award of bonus compensation when the Parties' relevant agreement provides that Petitioner must be employed on the payment date and Petitioner conceded that he was not, and had never intended to be, employed on that date?

15

16

17

18

19

20

21

22

23

24

25

While the hurdle is high, this motion to vacate is not a close call.  There is no basis – nor did Petitioner argue in favor of one – for the arbitrator's finding of jurisdiction over the quantum aspect of the Parties' dispute.  Nor is there any rational basis for his finding of Petitioner's entitlement to variable compensation; the arbitrator disregarded the Parties' clear and unambiguous agreement that Petitioner's voluntary resignation prior to the payment date forfeited any right to variable compensation and instead (mis)applied a prior, explicitly superseded agreement without basis.  There is no room for an interpretation of the Parties' agreement that could lead to any other rational result.  An arbitrator's lack of jurisdiction (an issue properly for the Court) and an irrational award that fails to draw its essence from the Parties' agreement are independently cognizable bases for vacatur under binding Supreme Court and Ninth Circuit precedent.

26

27

28

The material facts at issue are simple, straightforward and uncontested:  there are two agreements between the Parties, and while the earlier one contains an arbitration clause, the later one does not.  Instead, the subsequent agreement – which specifies an entirely different method of

1  resolving disputes – also contains an integration clause specifying that it is the "entire

2  understanding" of the Parties.  Fundamental principles of law uncontested by Petitioner – applied

3  to undisputed facts conceded by Petitioner – compelled the rejection of Petitioner's arbitration

4  claims, both on jurisdictional grounds and on the merits.  In the absence of the Parties' consent to

5  arbitration and because the Award exceeded the arbitrator's authority, the Petition must be denied

6  and the Award vacated.

7        Petitioner was a senior executive of Respondents who signed an employment agreement

8  dated December 5, 2012 (the "Employment Agreement").  Thereafter, on or about September 29,

9  2013, Petitioner and Respondents entered into an agreement (the "Incentive Compensation

10  Agreement") incorporating Respondents' variable compensation plan (the "Plan"),[1] which the

11  Parties agreed represented "the entire understanding of the Company and the employee regarding

12  [the variable compensation] program and *supersede[s] all prior representations, promises or*

13  *understandings*, oral or written, between the parties relating to this matter."  Plan at 8 (emphasis

14  added).  The Plan further provides that disputes regarding calculation must be made through a

15  manager and that the company's Compensation Review Board's decisions are "*final and binding*

16  on any question regarding interpretation or administration of the Plan."  Plan at 6 (emphasis

17  added).

18        There is no disagreement between the Parties that, under the plain language of the

19  Incentive Compensation Agreement, an employee is not entitled to a variable compensation

20  payment if he is no longer employed by Respondents on the date that such compensation is paid.

21  Plan at 7.  It is likewise undisputed that Petitioner was not – and by his own decision, never

22  intended to be – employed by Respondents in August 2014, when Respondents disclosed in the

23  Plan that it would, and did, pay variable compensation to eligible employees.  This arbitration

24  should have been open and shut.  Having chosen to resign prior to the payment date, Petitioner

25  offered no argument cognizable under the law for his claim to variable compensation.

26        Notwithstanding the Parties' unambiguous agreement that the Incentive Compensation

27

28

[1]  A true and correct copy of the Incentive Compensation Agreement and its incorporated Plan is
attached to the Stein Declaration as Exhibit 1.

1   Agreement and its incorporated Plan represented the "entire understanding" and "supersede[d] all

2   prior representations, promises or understandings" with regard to its subject matter (variable

3   compensation), as well as Respondents' repeated jurisdictional objections that were met with no

4   response from Petitioner, the arbitrator disregarded the Incentive Compensation Agreement.  As a

5   result, the arbitrator not only awarded Petitioner a variable compensation payment (to which he

6   had no entitlement under the Incentive Compensation Agreement), but he further proceeded to

7   calculate the measure of that variable compensation despite the clear language in the Incentive

8   Compensation Agreement reserving the "final and binding" authority on that matter to the

9   Compensation Review Board.  Then, having already exceeded his jurisdiction, the arbitrator

10  calculated and awarded Petitioner variable compensation more than double the amount Petitioner

11  would have received even had he not resigned – an amount in fact greater than any bonus

12  received by any of Respondents' employees in 2014 other than the CEO.  Such a runaway award

13  is precisely the reason why the Incentive Compensation Agreement reserves "final and binding"

14  determination for the Compensation Review Board and not an arbitrator, so as to ensure that

15  variable compensation payments are consistent and ensure "equitable treatment of employees in

16  similar settings and circumstances."  Plan at 6.

17          The Petition must thus be denied for two independent reasons.  First, the Parties never

18  agreed to arbitrate this dispute, which alone merits vacatur.  As the Supreme Court has stated,

19  "disputes over [an arbitration agreement's] applicability to the dispute at issue are matters [that]

20  the court must resolve." *BG Grp. Plc v. Rep. of Arg.*, 134 S. Ct. 1198, 1206-07 (2014) (internal

21  quotation marks omitted) (citing *Granite Rock Co. v. Teasmsters*, 561 U.S. 287, 299-300 (2010)).

22  Second, by disregarding the Parties' applicable agreement, the Award "fails to draw its essence

23  from the agreement." *Lagstein v. Certain Underwriters at Lloyd's, London*, 607 F.3d 634, 642

24  (9th Cir. 2010) (internal citation and quotation marks omitted).  Accordingly, the "completely

25  irrational" Award may be vacated under § 10 of the Federal Arbitration Act.  *Bosack v. Soward*,

26  586 F.3d 1096, 1106 (9th Cir. 2009) (asking "whether the award is 'irrational' with respect to the

27  contract"); 9 U.S.C. § 10(a).  *See also Cortez Byrd Chips, Inc. v. Bill Harbert Const. Co.,* 529

28  U.S. 193, 195 (2000) (holding venue provisions in Federal Arbitration Act to be "permissive,

1    permitting [a motion to confirm, vacate or modify an arbitration award] either where the award

2    was made or in any district proper under the general venue statute.").

3          While the arbitrator was presented with numerous instances of Petitioner's perjury

4    (including his admission that his declaration fabricated conversations regarding promises of

5    variable compensation), neither this motion nor the Award at issue involve gray areas of law,

6    contested facts or any issues on which reasonable minds could differ.  All this Court need do is

7    review the unambiguous, binding, superseding agreement between the Parties in order to

8    conclude both that the arbitrator lacked jurisdiction to make the Award and that its substance

9    cannot be drawn from the essence of – but in fact contradicts – that agreement.  As such, the

10    Petition for enforcement should be denied and the Award vacated.

11    **II.    FACTS**

12          Petitioner served as Respondents' Chief Marketing Officer for just over one year, from

13    February 2013 to May 2, 2014.  On December 5, 2012, he signed an Employment Agreement

14    governing his term of employment, describing his responsibilities and establishing termination

15    procedures.  Among the many terms covered by the Employment Agreement, it addressed

16    variable compensation:  Section 2(b) of the Employment Agreement stated in plain language that

17    Petitioner's variable compensation was "subject to the Executive's employment with the

18    Corporation through the applicable payment date for any such Variable Compensation" and

19    acknowledged that such payment date would not be until the third month following the end of the

20    fiscal year.  Employment Agreement at § 2(b).[2]

21          Electing to elaborate on the terms of Petitioner's variable compensation opportunity, the

22    Parties entered into the Incentive Compensation Agreement in September 2013, which expressly

23    incorporated the Plan and superseded the Employment Agreement with respect to variable

24    compensation.  There is no dispute that Petitioner signed the Incentive Compensation Agreement;

25    he attached it to his Demand for Arbitration, relied on it for his calculation of his alleged variable

26

27    [2] This provision was never acknowledged - let alone discussed or analyzed - in the Award.  A
true and correct copy of the Employment Agreement is attached to the Stein Declaration as

28    Exhibit 2.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

MOTION TO VACATE ARBITRATION AWARD
CASE NO. 4:15-CV-01234-WHA

1  compensation payment (in fact, it is the only document upon which he and the arbitrator relied for

2  his calculation), and acknowledged that he signed it in his declaration to the arbitrator.  Indeed,

3  Petitioner's entitlement to any variable compensation was contingent upon his acceptance.

4  Incentive Compensation Agreement at 3 ("No Bonus or Commission payments will be made until

5  electronic acceptance of the plan document has occurred.").

6        The Incentive Compensation Agreement incorporated by reference, and thus bound the

7  Parties to, the Plan.  Above the signature line, it reads: "I have read and understood both the

8  Fiscal Year 2014 Incentive Compensation Plan Document* and Incentive Compensation

9  Agreement and accept and agree to the regulations stated within."  Incentive Compensation

10  Agreement at 3 (asterisk in original).  As noted above, the Parties agreed in the incorporated Plan

11  that it represented "the entire understanding of the Company and the employee regarding [the

12  variable  compensation]  program  and  supersede[d]  all  prior  representations,  promises  or

13  understandings, oral or written, between the parties relating to this matter."  Plan at 8.  Ensuring

14  that the Plan must be applied unless it was itself superseded by a further written agreement, the

15  Parties agreed that "No modification to, addition to, or waiver of, any right or obligation

16  hereunder will be effective unless it is in writing and is *signed by the party* against which the

17  same is sought to be enforced."  *Id.* (emphasis added).

18        While the Employment Agreement contained a general arbitration clause, the superseding

19  Incentive Compensation Agreement made clear that the clause did not apply to any calculation of

20  the quantum of variable compensation.  In a section entitled "Disputes," the Parties agreed that

21  "[f]iling for disputes of a calculation must be made within 30 days from the date in which the

22  incentive compensation payment is received.  This must be done through a direct manager."  Plan

23  at 6.  The Plan continues:

24        Any exceptions and interpretations to the current Plan will be reviewed by the
        Compensation Review Board (CRB).  Any decisions made by the CRB shall be
25        final and binding on any question regarding interpretation or administration of the
        Plan. This contributes to consistency and supports the spirit of the Plan – fair and
26        equitable treatment of employees in similar settings and circumstances.

27  (*Id.*)

28        On April 14, 2014, Petitioner notified Respondents of his resignation; his last day of

1  employment with Open Text was May 2, 2014. Petitioner alleged that his resignation was upon

2  90 days' notice (which Respondents contested), but this allegation is immaterial to the dispute;

3  even if Petitioner's last day was July 14, 2014 as he alleged, his employment ended before

4  August 2014, when the Plan disclosed that Respondents would, and did, pay its 2014 year-end

5  variable compensation to eligible employees. Plan at 3. As specified both in the superseding

6  Incentive Compensation Agreement and in Section 2(b) of the Employment Agreement,

7  Petitioner was entitled to receive his variable compensation payment only if he remained

8  employed through the date of the variable compensation payment.

9       Notwithstanding that variable compensation was not owed to any employee who was not

10  employed on the date of payment, on Petitioner's last day of employment – May 2, 2014 –

11  Respondents made a settlement offer in return for a release and the elimination of the prospect of

12  nuisance litigation. Respondents offered to pay Petitioner a share of his target variable

13  compensation prorated to the percentage of the year during which he worked for Respondents.[3]

14  Petitioner rejected Respondents' settlement offer, and it remained unsigned by any party.

15       Petitioner commenced the arbitration on August 20, 2014. While Respondents accepted

16  the jurisdiction of the arbitrator to determine whether Mr. Cochrane is entitled to any variable

17  compensation under his Employment Agreement (since the "Disputes" forum selection clause of

18  the Plan refers specifically to "calculation"), Respondents objected from the outset that the

19  calculation of that compensation is beyond the arbitrator's authority under the terms of the

20  Incentive Compensation Agreement. Tellingly, Petitioner never contested Respondents'

21  jurisdictional challenge. Nonetheless, the weekend before the hearing, the arbitrator wrote to the

22  Parties to "reject Respondent's [sic] argument" that he lacked jurisdiction and stated that an

23  explanation would be forthcoming in the final award.[4]

24       After a one-day hearing on February 11, 2015, the arbitrator issued on March 10, 2015 the

25

26  [3] A true and correct copy of the May 2, 2014 settlement offer is attached to the Stein Declaration as Exhibit 3. The settlement offer also provided for Petitioner's variable compensation to be capped at 100% of his target.

27

28  [4] A true and correct copy of the arbitrator's February 7, 2015 email is attached to the Stein Declaration as Exhibit 4.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7.

**MOTION TO VACATE ARBITRATION AWARD**
**CASE NO. 4:15-CV-01234-WHA**

1  reasoned Award requested by the Parties. Despite acknowledging that Petitioner "refused to

2  accept Open Text's May 2, 2014 *offer*," the arbitrator then based his reasoning entirely on that

3  rejected settlement offer, calling it "Open Text's contemporaneous confirmation" that the

4  Employment Agreement governed Petitioner's termination and thus the Incentive Compensation

5  Agreement had no bearing on the dispute – an argument never raised or even suggested by

6  Petitioner.[5] Final Award at 3 (emphasis added).[6] Relying exclusively on one provision of the

7  superseded agreement to find that Petitioner was entitled to a variable compensation payment, the

8  arbitrator ignored the plain language of the Incentive Compensation Agreement (as well as

9  Section 2(b) of the Employment Agreement) requiring that Petitioner be employed on the date of

10  the variable compensation payment in August 2014 in order to be eligible for payment.

11        Having reached the completely irrational conclusions that Petitioner was entitled to a

12  bonus and that he had the jurisdiction to calculate the amount, the arbitrator compounded his error

13  further by awarding Petitioner a bonus almost three times the amount he would have received had

14  he remained employed through the payment date. Disregarding the uncontested evidence of

15  Respondents' targets – as filed in their SEC Form 10-K and applied to every other eligible

16  employee – the arbitrator's Award resulted in precisely the sort of variable compensation that the

17  Plan was designed to prevent, an inequitable payment inconsistent with the amounts received by

18  the other participating employees.

19  **III.  ARGUMENT**

20        The Award should be vacated – and enforcement should be denied – for two independent

21  reasons. First, the Parties did not vest an arbitrator with jurisdiction over the calculation of

22  Petitioner's variable compensation; "final and binding" authority over that issue rests with the

23  Compensation Review Board. Second, the Award is irrational insofar as it fails to draw its

24  essence from the Parties' agreement, as reflected in the fully-integrated, superseding Incentive

25  Compensation Agreement.

26

27  [5]  In fact, Petitioner had argued that the provisions of the offer letter were *contrary* to the express
     terms of the Employment Agreement.

28  [6]  A true and correct copy of the Final Award is attached to the Petition as Exhibit A.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8.

**MOTION TO VACATE ARBITRATION AWARD**
**CASE NO. 4:15-CV-01234-WHA**

### A. The Arbitrator Lacked Jurisdiction to Determine Quantum

The jurisdictional issue is resolved by this Court answering one simple question – is Petitioner's right to variable compensation governed by his 2012 Employment Agreement or his 2013 Incentive Compensation Agreement?  The former contains the arbitration clause upon which the arbitrator based his jurisdiction, while the latter reserves "final and binding" calculation for the Compensation Review Board.  Not only did Petitioner not challenge the fact that the Incentive Compensation Agreement and incorporated Plan did not provide for arbitration, but he conceded that he pursued no claim for breach of the Incentive Compensation Agreement or the Plan.

The question of whether the Parties agreed to arbitrate a dispute is a question for this Court to determine just like any other contractual dispute.  No party can be required to "submit to arbitration any dispute which he has not agreed to submit." *Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960).  This is the "first principle" that underscores the law of arbitration:  "Arbitration is strictly a matter of consent."  *Granite Rock Co. v. Teamsters*, 561 U.S. 287, 299 (2010) (internal citation and quotation marks omitted).  When determining whether the parties agreed to arbitrate, courts "should apply ordinary state-law principles that govern the formation of contracts."  *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see also Granite Rock Co.*, 561 U.S. at 288-89 (emphasizing that presumption in favor of arbitrability does not override "the principle that a court may submit to arbitration only those disputes . . . the parties have agreed to submit") (internal citation and quotation marks omitted).

This likewise applies to questions about whether a particular dispute is subject to arbitration, as "courts presume that the parties intend courts, not arbitrators, to decide what we have called disputes about 'arbitrability.'"  *BG Grp.*, 134 S. Ct. at 1206 (2014).  There is no colorable argument here that the Parties agreed to submit the question of arbitrability to an arbitrator:  the Employment Agreement is silent on the question of whether the arbitrator is entitled to determine its own jurisdiction.  Absent a clear indication to submit that question to the arbitrator, the question of arbitrability is "subject to independent review by the courts."  *First*

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9.

1    *Options*, 514 U.S. at 947.[7]

2          Turning to the substance of this question, therefore, the answer is self-evident.  The Court

3    need look no further than the relevant agreements to deny enforcement and vacate the Award:  it

4    is unassailable that the Incentive Compensation Agreement governs Petitioner's right to and

5    amount of variable compensation and, therefore, the Parties never consented to arbitrate the

6    calculation of Petitioner's bonus.  First, the Incentive Compensation Agreement succeeded in

7    time the Employment Agreement.  Second, the Incentive Compensation Agreement (and its

8    incorporated Plan) contained the Parties' clear and unambiguous agreement that it represented

9    "the entire understanding of the Company and the employee regarding [the variable

10   compensation] program and supersede[s] all prior representations, promises or understandings,

11   oral or written, between the parties relating to this matter."  Plan at 8.  Third, even if not

12   superseded with respect to variable compensation, Petitioner's Employment Agreement is silent

13   on how to calculate quantum – that can only be found in the Incentive Compensation Agreement

14   and, indeed, that was the only document upon which the arbitrator relied to determine quantum.

15   Therefore, the arbitrator could not have awarded any amount without looking to and applying the

16   Incentive Compensation Agreement; he had no right, however, to rely upon some provisions in

17   rendering his Award but ignore others, such as its "Disputes" section.

18         While the arbitrator's view of the jurisdictional objection is irrelevant to this Court's

19   "independent review" of the Parties' agreement, *see First Options*, 514 U.S. at 947, the single

20   sentence addressing jurisdiction in the Award provides no colorable argument that the Parties

21   agreed to arbitrate this dispute.  Adopting an argument that not even Petitioner advanced

22   (Petitioner never offered any argument responding to the jurisdictional challenge), the arbitrator

23   relied on Respondents' May 2 rejected settlement offer as effecting a waiver of their rights under

24

25   [7]  Likewise, it is immaterial that Respondents made these same objections to the arbitrator.  As
     Justice Sotomayor recently noted, *First Options* made clear that "arguing the arbitrability issue to
26   an arbitrator did not constitute clea[r] and unmistakabl[e] evidence sufficient to override an
     indisputably applicable presumption that a court was to decide whether the parties had agreed to
27   an arbitration." *BG Grp.*, 134 S. Ct. at 1214 n.1 (Sotomayor, J., concurring) (internal quotation
28   marks omitted).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10.

MOTION TO VACATE ARBITRATION AWARD
CASE NO. 4:15-CV-01234-WHA

1    the Incentive Compensation Agreement:  "[a]ccepting Open Text's contemporaneous conclusion

2    that the [Employment] Agreement – and its arbitration provision, para. 12) [sic] – governs

3    Cochrane's termination (Sousa letter, May 2, 2014), it follows that the Tribunal clearly has

4    authority to determine both entitlement and quantum."   Final Award at 3.   That was the

5    arbitrator's entire analysis of his jurisdiction.

6            Of course, Respondents did not "contemporaneous[ly] conclu[de]" that the Employment

7    Agreement applied; there was no dispute that the May 2 letter was only a settlement "offer,"

8    which Petitioner "refused to accept."  Final Award at 3.  As such, it remained unsigned and, as a

9    matter of law, it could not have altered the Parties' respective rights under the Incentive

10   Compensation Agreement.  As that agreement provides, "[n]o modification to, addition to, or

11   waiver of, any right or obligation hereunder will be effective unless it is in writing and is signed

12   by the party against which the same is sought to be enforced."  Plan at 8.[8]  Presumably unable to

13   reconcile this provision with his decision to rely upon the rejected May 2 settlement offer as

14   waiving Respondents' rights, the arbitrator never acknowledged this clause.

15           Because the Incentive Compensation Agreement did not vest the arbitrator with

16   jurisdiction to calculate Petitioner's variable compensation, the Award must be vacated.  *See*

17   *Kaplan v. First Options of Chi., Inc.*, 19 F.3d 1503, 1505 (3d Cir. 1994) (finding arbitrator lacked

18   jurisdiction and remanding with instructions to enter an order granting request to vacate), *aff'd*,

19   514 U.S. 938 (1995).

20           **B.      The Award Was "Completely Irrational"**

21           Independent of the arbitrator's lack of jurisdiction to decide quantum, the Award

22   should be vacated as being completely irrational.  As the Ninth Circuit recognized in *Biller v.*

23   *Toyota Motor Corp.*, "Under § 10 of the FAA, vacatur is appropriate where it is evident that the

24   arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and

25   definite award upon the subject matter submitted was not made.  [A]rbitrators exceed their

26

27   [8]  The Employment Agreement likewise provides that it "may be amended only by an instrument
     in writing signed by the parties hereto," Employment Agreement at 17, as the Parties then did
28   with the Incentive Compensation Agreement.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

                                                        11.          **MOTION TO VACATE ARBITRATION AWARD**
                                                                     **CASE NO. 4:15-CV-01234-WHA**

1   powers in this regard not when they merely interpret or apply the governing law incorrectly, but

2   when the award is completely irrational, or exhibits a manifest disregard of law." 668 F.3d 655,

3   665 (9th Cir. 2012) (alteration in original) (citations and internal quotation marks omitted) (citing

4   *Kyocera Corp. v. Prudential-Bache*, 341 F.3d 987, 997 (9th Cir. 2003)).  According to the well-

5   established Ninth Circuit test, an award is "completely irrational" when "the arbitration decision

6   fails to draw its essence from the agreement." *Lagstein*, 607 F.3d at 642.  In order for an award to

7   "draw its essence from the agreement," it must be "derived from the agreement, viewed in light of

8   the agreement's language and context, as well as other indications of the parties' intentions."

9   *Lagstein*, 607 F.3d at 642.

10   Here, the Award unquestionably "fails to draw its essence from the agreement."  Having

11   relied on just a single clause in the Employment Agreement – and having disregarded the Parties'

12   subsequent, superseding, fully-integrated agreement – the Award can hardly be said to be

13   "derived from" the binding, applicable agreement of the Parties.  *See, e.g.*, *Fin. Network Inv.*

14   *Corp. v. Karoon*, 540 F. App'x 597, 598 (9th Cir. 2013) (requiring a showing of "how the award

15   is untethered from the parties' agreements" to establish that award is "completely irrational").

16   There can be no clearer case for vacatur than an award that fails to credit a fully-integrated

17   agreement that explicitly supersedes the agreement applied by the arbitrator.

18   First, the Incentive Compensation Agreement was the binding agreement between the

19   Parties governing Petitioner's variable compensation.  There is no rational legal argument to the

20   contrary; the Incentive Compensation Agreement:

21   • was agreed to by the Parties;

22   • post-dated the Employment Agreement;

23   • represented "the entire understanding of the Company and the employee regarding
24   [the variable compensation] program and supersede[d] all prior representations,
     promises or understanding, oral or written, between the parties relating to this
25   matter," Plan at 8;

26   • addressed the subject matter of the dispute (variable compensation);

27   • could not be amended except in a signed writing; and

28   • was never amended by a signed writing.

**MOTION TO VACATE ARBITRATION AWARD**
**CASE NO. 4:15-CV-01234-WHA**

1   Black letter contract law thus required the arbitrator to apply the terms of the Incentive

2   Compensation Agreement to this dispute.  Integration clauses, such as the one in the Plan, are

3   persuasive evidence that the parties intended an agreement to supersede any earlier agreements,

4   and clauses prohibiting amendment except in a signed writing likewise must be given full force

5   and effect.  *See Pace v. Honolulu Disposal Servs.*, 227 F.3d 1150, 1157 (9th Cir. 2000) ("Faced

6   with clear, unambiguous written agreements containing integration clauses and no-oral-

7   modification clauses, and in the absence of language acknowledging any supplemental

8   agreements, we hold that the parol evidence rule bars introduction of evidence of a proffered oral

9   agreement that directly contradicts a key term of the written contracts.").  Indeed, Petitioner

10  conceded that he had no claim for variable compensation under the plain language of the Plan,

11  which provided that "employees must be present on the day of payment to receive the payment."

12  Plan at 7.

13      It was only by disregarding the agreement governing the issue in dispute that the arbitrator

14  could and did rule in favor of Petitioner.  The arbitrator's entire discussion of the Incentive

15  Compensation Agreement and Plan in the Award was in paragraph 3(A):

16      Open Text argued that Open Text's later-adopted Worldwide Incentive
        Compensation Policy dated July 1, 2013 ("WICP") and an Incentive
17      Compensation Agreement ("ICA") of September 29, 2013, not Cochrane's earlier
        Agreement, govern the terms of his termination and separation compensation.
18      The Arbitrator finds this argument unpersuasive.  Among other reasons, this is an
        after-the-fact argument to disavow Open Text's contemporaneous confirmation
19      that the Employment Agreement governs Cochrane's termination (Sousa letter,
        May 2, 2014).  *See also* WICP, p. 2 of 14, Plan Participation:  "Nothing in this
20      plan shall be construed to create… a term contract between the Company and the
        participant . . . ."
21

22      The arbitrator's explanation demonstrates how untethered the Award is from the Parties'

23  agreement.  First, as noted above, the May 2, 2014 Sousa letter – the sole basis on which the

24  arbitrator found that Open Text "contemporaneous[ly] confirm[ed]" the applicability of the

25  Employment Agreement over the Plan – was a settlement offer in return for a release, which

26  Petitioner rejected.  The Award cannot be said to derive from the Parties' agreement when it

27  relies on a document to which the Parties never agreed.  The Incentive Compensation Agreement

28  itself prohibited waiver of its terms by any oral communications or unsigned offer.  Moreover, as

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13.

**MOTION TO VACATE ARBITRATION AWARD**
**CASE NO. 4:15-CV-01234-WHA**

1    a matter of law and public policy, an unaccepted settlement offer cannot and should not alter a

2    party's rights under a contract. *See, e.g.*, Fed. R. Evid. 408(a)(2) ("conduct or a statement made

3    during compromise negotiations about the claim" is inadmissible "either to prove or disprove the

4    validity or amount of a disputed claim"); *see also id.* advisory committee's notes (1974) ("The

5    purpose of this rule is encourage settlements which would be discouraged if such evidence were

6    admissible.").

7          The arbitrator's second basis for his refusal to apply the Plan is nonsensical.  The

8    provision that "[n]othing in this plan shall be construed to create . . . a term contract between the

9    Company and the participant" has nothing whatsoever to do with this dispute.  While one cannot

10   know for certain what motivated the arbitrator to quote this provision (which had never been cited

11   by Petitioner or mentioned throughout the arbitration proceeding), it appears that he confused the

12   non-formation of a "term contract" with the non-formation of a "contract."  The Incentive

13   Compensation Agreement and the incorporated Plan dealt only with the subject of variable

14   compensation – it did not provide for a fixed term of employment for any employee who was

15   otherwise employed at will and, in Petitioner's case, it did not disturb the "term" of employment

16   in his Employment Agreement.

17         But while it was not a "term contract," the Incentive Compensation Agreement and Plan

18   most certainly created a "contract" between the parties; it says that Petitioner "accept[ed] and

19   agree[d]" to their terms and that the "employee's acceptance of the [Incentive Compensation

20   Agreement], will serve as acknowledgment that this document and any referenced documents

21   represent the entire understanding of the Company and the employee . . . ."   Incentive

22   Compensation Agreement at 3; Plan at 8.  To the extent the arbitrator failed to apply the Plan

23   because he irrationally believed the non-creation of a "term contract" meant that the Incentive

24   Compensation Agreement was not an agreement at all (as it appears from his citation to that

25   provision), his Award "fails to draw its essence" from the Parties' agreement and should be

26   vacated as "completely irrational."  In fact, had the arbitrator determined that the Incentive

27   Compensation Agreement was not a contract, he would have no basis to award any variable

28   compensation because the material elements of Petitioner's claim and the arbitrator's calculation

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14.

**MOTION TO VACATE ARBITRATION AWARD**
**CASE NO. 4:15-CV-01234-WHA**

1  were found only in the Incentive Compensation Agreement and its incorporated Plan.

2  The Award's failure to acknowledge the Incentive Compensation Agreement not only led

3  to a completely irrational decision regarding entitlement, it led to two crucial errors with respect

4  to the amount of the variable compensation payment. First, as discussed in Point I, the arbitrator

5  improperly concluded that he had jurisdiction to resolve this issue. Second, the Award ignored

6  the plain language in the very document on which Petitioner relied on for his outdated incentives;

7  the Parties' agreement specified that those targets "will be adjusted for any future acquisitions."

8  Incentive Compensation Agreement at 2 (emphasis added). Respondents offered unrebutted

9  evidence (including in its public securities filings) that the targets were adjusted for a billion

10  dollar acquisition that occurred during the fiscal year, which the arbitrator irrationally disregarded

11  in stating three times that Open Text offered "no evidence." Final Award at 5-6.

12  Because the Award was irrational and did not draw its essence from the Parties'

13  agreement – with respect to both the unambiguous agreement establishing Petitioner's lack of

14  entitlement that the arbitrator disregarded and his decision to ignore Respondents' clear right to

15  adjust targets for future acquisitions – the Award exceeded the scope of an arbitrator's authority

16  and should be vacated pursuant to § 10 of the Federal Arbitration Act.

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15.

MOTION TO VACATE ARBITRATION AWARD
CASE NO. 4:15-CV-01234-WHA

1

**IV.    CONCLUSION**

2

Because the arbitrator lacked jurisdiction to make the Award and because the arbitrator

3

exceeded the scope of his authority by rendering a completely irrational award, the Petition

4

should be denied and the Award vacated.

5

6

Dated: April 24, 2015

CLEARY GOTTLIEB STEEN & HAMILTON LLP
JEFFREY ROSENTHAL (*pro hac vice*)
DARRYL STEIN (*pro hac vice*)

7

COOLEY LLP
PATRICK GUNN (172258)

8

9

10

*/s/ Patrick Gunn*

Patrick Gunn (172258)
Attorneys for Respondents
OPEN TEXT CORPORATION and
OPEN TEXT Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16.

**MOTION TO VACATE ARBITRATION AWARD**
**CASE NO. 4:15-CV-01234-WHA**