# EXHIBIT 8

AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| KEVIN COCHRANE,<br><br>            Claimant,<br><br>    v.<br><br>OPEN TEXT CORPORATION and OPEN TEXT INC.,<br><br>            Respondents. | CASE NO.: 01-14-0001-2566<br><br>CLAIMANT'S PRE-HEARING BRIEF |

**I.    PRE-HEARING ARGUMENT**

Respondents Open Text Corporation and Open Text Inc. (collectively "Open Text") hired Claimant Kevin Cochrane as their Chief Marketing Officer ("CMO") and for over 15 months he performed his duties, managed a staff of 300, and reported directly to CEO Mark Barrenechea. As is typical when hiring a "C" level employee, the relationship between Cochrane and Open Text was governed by a thorough Employment Agreement. After Cochrane's voluntary decision to resign from Open Text, Open Text decided to breach that Employment Agreement by failing to pay to Cochrane all of the "Accrued Payments" due to him. This arbitration is the result.

The contractual provisions at issue are straightforward:

Section 6(c) defines the "Separation Payments" owed to Cochrane and states that "[i]n the event of the Executive's Separation from Service with the Corporation . . . , the Corporation shall pay the Executive, within thirty (30) days following the Date of Separation from Service, any *Accrued Payments*" (emphasis added). Under Section 6(a)(i), "Accrued Payments" includes, *inter alia*, "any Variable Compensation earned by the Executive for the fiscal year prior to the

CLAIMANT'S PRE-HEARING BRIEF

year in which the Date of Separation from Service has occurred *but not yet paid prior to the Date of Separation from Service*" (emphasis added).

Open Text's fiscal year ended on July 1, 2014, and Cochrane's Date of Separation from Service was July 14, 2014. Thus, Cochrane was employed for the full fiscal year prior to the year in which the Date of Separation from Service has occurred, and as of July 14, 2014, he had not yet been paid his Variable Compensation ("VC") for the fiscal year ending July 1, 2014. Under the unambiguous terms of the Employment Agreement, Cochrane should receive the entire amount of VC due to him for the fiscal year ending July 1, 2014.

In opposition, Open Text makes three arguments for why it should not have to pay VC to Cochrane for FY14: (1) he was not employed by Open Text on the VC payment date in August 2014, (2) he did not give 90 days notice of his intent to be employed by Open Text through the end of FY14, and (3) he was not employed by Open Text through the end of FY14 because he ceased fulltime work as of May 2, 2014. These arguments are inconsistent with the terms of the Employment Agreement and the factual record.

### A. Cochrane Seeks Payment Of The VC Component Of The "Accrued Payments" Owed To Him By Open Text.

Open Text argues that Section 2(b) of the Employment Agreement and provisions in the FY14 Incentive Compensation Plan require that Cochrane be employed on the August 2014 date that Open Text paid out bonuses in order to be eligible to receive any VC for FY14. This argument completely disregards the express and unambiguous language of Section 6 of the Employment Agreement. As quoted above, the Employment Agreement calls for payment to Cochrane of all Accrued Payments and those payments include VC "*not yet paid* prior to the Date of Separation from Service" (emphasis added). This provision makes no sense if the parties

did not intend for Cochrane to receive his VC as part of his Accrued Payments under circumstances such as those here.  This specific and unambiguous provision in the Employment Agreement controls over any contrary provision in the general compensation plan.  The interpretation of a contract is a question of law under Delaware law, and "a contract should be interpreted in such a way as to not render any of its provisions illusory or meaningless." *Sonitrol Holding Co. v. Marceau Investissements*, 607 A.2d 1177, 1183 (Del. 1992).  Open Text's argument would render illusory or meaningless Section 6(a)(i)'s definition of Accrued Payments to include unpaid VC.  Thus, Open Text's first argument is fundamentally at odds with an unambiguous provision in the Employment Agreement, and it must be rejected.

### B.     Cochrane Gave The Required 90-Day Notice

Open Text argues that Cochrane should not receive the VC due to him as an Accrued Payment because he did not give the 90-day notice required by the Employment Agreement.  In support of this argument, Open Text relies primarily on the content of the email Cochrane sent on April 14, 2014 (attached as Exhibit B to Open Text's Response to Claimant's Demand for Arbitration).  While this email does not use the term, "90-day notice", taken in context, it is clear that Cochrane intended to comply with the notice provision in the Employment Agreement.  The email confirmed the conversation Cochrane had with Barrenechea that same date, and it states that Cochrane "would like to formally provide notice."  The email also expresses Cochrane's desire to work to execute the plan for Q4 execution and to work on plans for FY15.  These statements make clear Cochrane's intent to remain with the company through the end of Q4 (i.e. through June 30, 2014) and to assist with planning for FY15 which began on July 1, 2014.  Moreover, Open Text's argument is flatly inconsistent with their behavior prior to this dispute

arising: all communications between Cochrane and Open Text reflect a Separation of Service date of July 14, 2014 which was 90 days after Cochrane gave his notice on April 14, 2014. This is not coincidental, and Open Text cannot claim that Cochrane did not comply with intent behind the notice provision in the Employment Agreement.

C. **Open Text Unilaterally Decided To Place Cochrane on Garden Leave Between May 2 And July 14, 2014 And It Cannot Take Rely On This To Deprive Cochrane Of His Accrued Payments**

As noted above, the factual record is clear that Cochrane gave the required 90-day notice and intended to remain fully employed by Open Text until July 14, 2014. Open Text, however, unilaterally decided to place Cochrane on garden leave for the period May 2 to July 14, 2014. This decision by Open Text is consistent with the provisions in paragraph 6(c) of the Employment Agreement which allows the company to waive the notice period and terminate Cochrane immediately. Doing so, however, *does not change the company's obligation to pay Cochrane all Accrued Payments (including VC) for the full three month notice period*. Thus, there is no contractual basis for Open Text's claim that Cochrane should be deprived of his agreed compensation because Open Text decided not to make full use of Cochrane's services.

D. **The Arbitrator Should Award Cochrane His Unpaid VC And Determine The Appropriate Amount**

With respect to calculation of the amount of VC due to Cochrane, there are three components: Open Text's revenues, Open Text's operating income, and Cochrane's individual performance. Attainment of the goals on these three metrics is then applied to Cochrane's base bonus of $200,000. Cochrane has produced a plan document from Open Text with the targets applicable to his bonus for FY14. Open Text argues that these targets were amended after the date of this document, but Open Text has not produced any document reflecting this amendment.

-5-

Absent such evidence, the award should be based on the targets set out in the documents attached to the Demand for Arbitration. Open Text also critiques the attainment figures used by Cochrane and supplies what it states are the correct attainment figures. Cochrane accepts these figures. As a result, depending on whether Open Text can prove the amendment of the targets or not, the bonus calculation should be one of the two amounts in the table below:

|  | Targets in Actual Plan Document | Targets Claimed by Open Text |
|---|---|---|
| Revenue (in millions) (45%) | Performance: $1,613<br>Target: $1,461.7<br>Attainment: 110%<br>Bonus: $180,000 | Performance: $1,613<br>Target: $1,666<br>Attainment: 97%<br>Bonus: $63,000 |
| Operating Income (in millions) (45%) | Performance: $486<br>Target: $434.7<br>Attainment: 112%<br>Bonus: $198,000 | Performance: $486<br>Target: $485<br>Attainment: 100%<br>Bonus: $90,000 |
| Board Objectives (10%) | Attainment: 125%<br>Bonus: $60,000 | Attainment: 125%<br>Bonus: $60,000 |
| Total Bonus | $438,000 | $213,000 |

It is undisputed that this payment was due 30 days after the Date of Separation of Service, i.e. August 13, 2014. Cochrane should be awarded interest on this amount until paid.

**II.   Witnesses**

Kevin Cochrane is the only witness Claimant will call.

**III.   Exhibits**

1. Employment Agreement attached as Exhibit 1 to the Demand

2. Departure Documents attached as Exhibit 2 to the Demand

3. Compensation plan documents attached as Exhibit 3 to the Demand

4. Email dated April 14, 2014 attached as Exhibit B to the Response

5. Screenshot of text message attached as Exhibit 5 hereto

CLAIMANT'S PRE-HEARING BRIEF

DATED: January 16, 2015.

        JEFFREY E. FAUCETTE
        SKAGGS FAUCETTE LLP
        One Embarcadero Center, Suite 500
        San Francisco, California 94111
        Telephone:   415/315-1669
        Facsimile:   415/433-5994

        _____
        JEFFREY E. FAUCETTE

        Attorney for Claimant
        KEVIN COCHRANE

CLAIMANT'S PRE-HEARING BRIEF

# EXHIBIT 5

••○○○ Verizon LTE    11:46    83% 🔋

‹ (175)    **+1 (226) 338-0435**    Contact

[previous message, partially visible]

What time can I expect to hear from you?

Fri, May 2, 15:14

Manny, thanks for the call. And thanks for the clarification from legal on the contract. I haven't had access to company email since 12 noon PST, so can't email anyone directly

My pleasure. Our systems automatically shut things down when an employee is processed as a departure. You are still paid and on garden leave but systems kick in. Sorry about that.

📷  iMessage    Send