1    COOLEY LLP
     PATRICK GUNN (172258) (pgunn@cooley.com)
2    101 California Street
     5th Floor
3    San Francisco, CA  94111-5800
     Telephone:     (415) 693-2000
4    Facsimile:     (415) 693-2222

5    CLEARY GOTTLIEB STEEN & HAMILTON LLP
     JEFFREY ROSENTHAL (*pro hac vice*)
6    (jrosenthal@cgsh.com)
     DARRYL STEIN (*pro hac vice*)
7    (dstein@cgsh.com)
     One Liberty Plaza
8    New York, NY 10006
     Telephone:     (212) 225-2000
9    Facsimile:     (212) 225-3999

10    Attorneys for Respondents
     OPEN TEXT CORPORATION and
11    OPEN TEXT Inc.

12

               UNITED STATES DISTRICT COURT

13

           NORTHERN DISTRICT OF CALIFORNIA

14

               SAN FRANCISCO DIVISION

15

16

17    KEVIN COCHRANE, an individual,         Case No. 4:15-cv-01234-WHA

              Petitioner,         **EXHIBIT NO. 9 TO DECLARATION OF**
18                                        **DARRYL STEIN IN SUPPORT OF**
             v.                  **RESPONDENTS' MOTION TO VACATE**
19                                        **ARBITRATION AWARD**
           OPEN TEXT CORPORATION, a Canadian
20    corporation and OPEN TEXT INC., a       Date:         June 11, 2015
           Delaware corporation,               Time:         8:00 a.m.
21                                        Courtroom:  8 – 19th Floor
                Respondents.       Judge:        Hon. William Alsup
22

23                                        Motion Filed: April 24, 2015

24                                        **[Redacted Version]**

25

26

27

28

AMERICAN ARBITRATION ASSOCIATION

KEVIN COCHRANE,

               Claimant,

       v.

OPEN TEXT CORPORATION and OPEN
TEXT INC.,

               Respondents.

**RESPONDENTS' PRE-HEARING BRIEF**

## PRE-HEARING ARGUMENT[1]

Claimant has failed to establish *any* entitlement to a bonus payment, let alone the excessive and inequitable sum he demands.  Indeed, Claimant's lack of engagement on material, dispositive issues continues to leave Respondents befuddled as to why this arbitration is being pursued.

The parties' respective submissions clearly set forth the three questions for this Tribunal to answer:

1)  Did Claimant have to remain employed by OpenText through the August 2014 date of payment of variable compensation in order to be entitled to such compensation?

   - The unambiguous documentary evidence confirms that employment through the date of payment was a pre-condition that Claimant indisputably failed to satisfy.

2)  If Claimant is entitled to variable compensation, does the Tribunal have jurisdiction to determine the amount of his bonus?

   - Claimant's pre-hearing submission nowhere disputes Respondents' position that the plain language of the Plan limits the Tribunal's jurisdiction to the question of entitlement.

3)  If Claimant is entitled to such compensation *and* this Tribunal has jurisdiction to determine the amount, has Claimant met his burden of proof that he was entitled to variable compensation more than double (on a percentage basis) every other OpenText employee who received variable compensation?

---

[1]     All capitalized terms used herein shall have the meaning set forth in Respondent's Response to Claimant's Demand for Arbitration ("Response").

- Not only do the Plan documents themselves state that the targets "will" be adjusted for acquisitions, OpenText's public securities filings – documents subject to intense scrutiny and severe penalty if inaccurate – confirm Respondents' target numbers. Claimant's only argument – that there is no written evidence of these targets – disregards the terms of the Plan and the documentary evidence.

In short, Claimant has failed to satisfy his burden of proof on any of these three issues. And while the Respondents carry no such burden, the evidence will indisputably establish that Claimant had no entitlement to any variable compensation, having voluntarily decided to leave OpenText prior to payment of FY14 bonuses. Even had he remained employed through such payment date, his entitlement would have been based on the same targets upon which every other eligible OpenText employee received his or her variable compensation.

## I. Claimant Was Required To Be, But Indisputably Was Not, Employed On The Date Of OpenText's FY14 Variable Compensation Payments In Order To Have Any Entitlement.

The relevant starting point for determining Claimant's entitlement to variable compensation must, as a matter of law, be the Plan. The Incentive Compensation Agreement – which incorporates the Plan by reference – is the most recent document signed by Claimant regarding variable compensation, and it could not be clearer that the Plan represents "the entire understanding of the Company and the employee regarding [the variable compensation] program and *supersede[s] all prior representations, promises, or understanding*, oral or written, between the parties relating to this matter." (Ex. A at p. 8 (emphasis added)). While Claimant may wish to – and does – disregard the unambiguous terms of the Plan, the fact that it expressly states that it "*supersede[s]*" all prior understandings means that it is the *only* agreement that matters here. And Claimant does not dispute that the Plan unambiguously provides that

> In the event of a voluntary resignation, if an employee's last working day is prior to the incentive plan's period payment date, in either the quarterly or annual plan, the quarterly or annual payment will be forfeited. As such, employees must be present on the day of payment to receive the payment. (Ex. A at p. 7).

Claimant's sole response is that the Plan doesn't apply to him because a "specific and unambiguous provision in the Employment Agreement controls over any contrary provision in the general compensation plan" because otherwise it would render provisions "illusory or meaningless." (Claimant's Pre-Hearing Brief at p. 3). But Claimant invokes the wrong legal principle entirely. Putting aside that the Plan is *consistent* with the Employment Agreement, it is not merely a "general compensation plan" but rather a binding, *superseding agreement* among the Parties. There is no principle of law that prevents parties from superseding a prior agreement, even in a manner that changes the benefits of that prior agreement. It would be contrary to every tenet of contract law for this Tribunal to disregard an unambiguous provision in the signed and explicitly *superseding* Plan in favor of the prior Employment Agreement, even were the Employment Agreement contradictory.

Moreover, even were the Employment Agreement not superseded, it is consistent with the payment date requirement of the Plan. Claimant's Pre-Hearing Brief never addresses the unambiguous language of Section 2(b) of the Employment Agreement: entitlement to variable compensation is "subject to the Executive's employment with the Corporation through the applicable *payment date* for any such Variable Compensation." (Ex. 1 at § 2(b)).

In the face of such clear and consistent language in both the Plan and Section 2(b) of his Employment Agreement, and the indisputable fact that he was not (and, he concedes, never intended to be) employed by OpenText on the payment date in August 2014, Claimant offers a tortured reading of Section 6(c) as providing him with a full bonus even if not employed on the payment date. In so doing, Claimant ignores the word "prorated" in Section 6(c). For good reason – no interpretation of Section 6(c) would result in the bonus Claimant seeks. However, even were Section 6(c) interpreted as Claimant insists, that would mean – at best for Claimant –

3

that it contradicts Section 2(b), which plainly requires continued employment as of the payment date to receive such a payment.  In that circumstance, even were the Employment Agreement not superseded by the Plan, it is fatal for Claimant (who bears the burden of proof) that no parol evidence supports his position other than his self-serving testimony.[2]

As for Claimant's self-serving testimony, it is completely unsupported by the extensive record.  Not only are the circumstances of his departure (as well as his claimed notice to work through July 14) irrelevant in light of the clear language of his Employment Agreement and the Plan, Claimant's account is repeatedly contradicted by contemporaneous e-mail exchanges, as Mr. Sousa will testify at this hearing.  Moreover, Mr. Cochrane's allegations cannot be reconciled with the separation offer he received on May 2, which plainly shows Respondents' contemporaneous understanding of the earlier communications with Claimant.  Indeed, there is no evidence confirming Claimant's testimony that Mr. Sousa acknowledged Claimant's entitlement to any variable compensation.  Claimant's failure to secure such a promise (which Respondents insist was never made) in writing is all the more telling since Claimant had just days before been told *in writing* that another employee had, like Claimant, forfeited his entitlement to variable compensation by voluntarily departing prior to the payment date.

## II.   If Claimant Is Entitled To A Bonus, This Tribunal Cannot Determine Its Quantum.

The Response explains that under the clear and unambiguous terms of the Plan, "the calculation of [variable] compensation is beyond the Tribunal's authority," (Response ¶¶ 30-32),

---

[2]       Of course, this Tribunal *can* harmonize Sections 2(b) and 6(c) by construing the latter to provide for a variable compensation payment when notice is given before the close of the fiscal year such that the notice period extends past the payment date.  In that case, the payment would be *prorated* based upon the proportion of the year he or she worked.  For example, had Claimant given 90-days' notice on June 1 and been relieved of his responsibilities at that time, the notice period would have lasted until September 1 (after the payment date), and he would have been entitled to eleven-twelfths of his variable compensation (the proportion of the year he actually worked).  This interpretation must be preferred to Claimant's proffered interpretation, which cannot be harmonized with Section 2(b).  In any event, such a reading of the provision is inapplicable here, as Claimant concedes that the end of his alleged notice period, on July 14, was more than a month *before* the August payment date.

yet none of the Claimant's papers even addresses this issue.  Accordingly, this Tribunal should accept as uncontested the limitation on its jurisdiction and decide only Claimant's entitlement to, but not quantum of, any variable compensation payment.

### III.   Mr. Cochrane's Bonus, If Any, Can Be No Greater than $143,057.69.

If, notwithstanding the arguments above, this Tribunal concludes both that Claimant is entitled to a bonus and that the Tribunal has jurisdiction to determine quantum thereof, Claimant's demand for a $438,000 award must be rejected on its face.

While the GXS acquisition is undisputed, Claimant suggests that he "had no expectation that the targets would necessarily be revised following the GXS acquisition." (Cochrane Decl. ¶ 24).  In so arguing, Claimant blinds himself to the footnote *to the very same targets that he cites*, which says precisely that the targets "will be adjusted for any future acquisitions" (Response ¶ 21; Ex. 3).  Claimant also asserts that OpenText "has not produced any document reflecting" the Adjusted Targets; in so arguing, Claimant ignores OpenText's Form 10-K.  (Ex. E).  In all, Claimant fails to challenge almost any of the facts set forth in the Response regarding the calculation of the bonus, including that the Compensation Review Board and the CEO/President have the right to revise targets "at their sole discretion" (Response ¶ 22 & Ex. A); "every OpenText executive knew that their incentive targets would necessarily be adjusted to reflect [the GXS acquisition]" (Response ¶ 24); and every other eligible OpenText employee's bonus was calculated using the publicly-filed Adjusted Targets (Response ¶ 25).

Accordingly, Mr. Cochrane's bonus – if any and if it may be determined by the Tribunal (over OpenText's objection) –  must be calculated using the targets applicable to every other eligible employee and pro-rated to reflect his early departure, and thus would be no greater than $143,057.69.

Dated: January 28, 2015
New York, New York

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By: _____

Jeffrey A. Rosenthal
A Member of the Firm

One Liberty Plaza
New York, New York 10006
Telephone:(212) 225-2000
Facsimile: (212) 225-3999

*Attorneys for Respondents Open Text Corporation
and Open Text Inc.*

Of Counsel:

Darryl G. Stein

<u>APPENDIX A – RESPONDENTS' WITNESSES</u>

OpenText will call Gordon Davies and Manuel Sousa.

## APPENDIX B – RESPONDENTS' EXHIBITS

1.     Employment Agreement (Demand Ex. 1);

2.     Departure Documents (Demand Ex. 2);

3.     Incentive Compensation Agreement (Demand Ex. 3);

4.     Incentive Compensation Plan (Response Ex. A);

5.     E-mail dated April 14, 2014 (Response Ex. B);

6.     E-mail dated April 10, 2014 (Response Ex. C);

7.     E-mail dated April 30, 2014 (Response Ex. D);

8.     Excerpts of OpenText's FY2014 Form 10-K (Response Ex. E);

9.     E-mail dated April 28, 2014 (Pre-Trial Brief Ex. F);

10.    E-mail dated May 2, 2014 6:43 AM" (Pre-Trial Brief Ex. G);

11.    E-mail dated May 2, 2014 12:11 PM (Pre-Trial Brief Ex. H); and

12.    E-mail dated May 2, 2014 2:17 PM (Pre-Trial Brief Ex. I).

# EXHIBIT F

Redacted

Redacted

EXHIBIT G

Redacted

Redacted

Redacted

# EXHIBIT H

Redacted

Redacted

Redacted

Redacted

Redacted

# EXHIBIT I

Redacted

Redacted

Redacted

Redacted

Redacted