IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

KEVIN COCHRANE,

    Petitioner,

v.

OPEN TEXT CORPORATION AND OPEN TEXT INC.,

    Respondents.

No. C 15-01234 WHA

**ORDER DENYING MOTION TO VACATE ARBITRATION AWARD; GRANTING PETITION TO CONFIRM ARBITRATION AWARD**

## INTRODUCTION

On a petition to confirm an arbitration award, respondents move to vacate the award. For the reasons stated herein, respondents' motion to vacate is **DENIED**. The petition to confirm the arbitration award is **GRANTED**.

## STATEMENT

Respondent Open Text Corporation hired petitioner Kevin Cochrane as its chief marketing officer in early 2013. Before beginning work, Cochrane and Open Text entered into an employment agreement. The twenty-nine page employment agreement, which broadly defined Cochrane's responsibilities and Open Text's termination procedures, contained the following arbitration clause (Stein Decl. Exh. 2 at 15):

> 12. Arbitration; Forum Selection.
>
> (a) Arbitration
>
> If there is a disagreement or dispute between the parties with respect to this Agreement or the interpretation thereof, such disagreement or dispute will be referred to binding arbitration to be conducted by a single arbitrator . . . pursuant to the American Arbitration Association's (the "AAA") rules governing commercial arbitration in effect at the time of the arbitration, except as modified herein. . . . The procedure to be followed shall be as agreed by the parties or, in default of agreement, determined by the arbitrator(s), provided, however, that depositions or examinations for discovery will not be allowed but information may be exchanged by other means. . . . The final decision of the arbitrator or arbitrators or any two of the three arbitrators will be furnished to the parties in writing and will constitute a conclusive determination of the issue in question, binding upon the parties, without right of appeal.  The fees and expenses of the arbitration shall be in the discretion of the arbitrator(s).  Judgment upon the award may be entered in any court of competent jurisdiction.

This employment agreement also covered how Open Text would pay Cochrane variable compensation.

After Cochrane had been working for several months, he and Open Text signed an incentive compensation agreement, which further described and modified how Open Text was to pay variable compensation.  The incentive compensation agreement had a no oral modification clause and was silent as to arbitration.  The agreement went on to state (Stein Decl. Exh. 1 at 6, 8):

> Any exceptions and interpretations to the current Plan will be reviewed by the Compensation Review Board (CRB).  Any decisions made by the CRB shall be final and binding on any question regarding interpretation or administration of the Plan.  This contributes to consistency and supports the spirit of the Plan — fair and equitable treatment of employees in similar settings and circumstances.
>
>      *   *   *
>
> The employee's acceptance of the ICA will serve as acknowledgment that this document and any referenced documents represent the entire understanding of the Company and the employee regarding this program and supersede all prior representations, promises or understandings, oral or written, between the parties relating to this matter.

2

1    In April of 2014, Cochrane notified Open Text of his intention to resign. The parties
2 disagreed on the amount of variable compensation due to Cochrane upon his resignation as well
3 as other compensation issues. Three weeks later, Open Text sent Cochrane a letter attempting to
4 resolve the dispute. Among other things, the unsigned letter stated: "Except as provided herein,
5 the terms and conditions of the Employment Agreement shall govern the obligations of the parties
6 with respect to your Separation from Service." Cochrane rejected the offer contained in the letter,
7 and it remained unsigned by either party.

8    In August of 2014, Cochrane submitted a demand for arbitration to the American
9 Arbitration Association, pursuant to the terms of the arbitration clause in the employment
10 agreement, based on Open Text's alleged failure to pay compensation as required by paragraph
11 6(a)(I) of the employment agreement. The parties agreed to the appointment of William Karl
12 Wilburn as the sole arbitrator. In February of 2015, an arbitration hearing occurred in which both
13 sides presented testimony, evidence, and argument. One month later, the arbitrator issued a
14 seven-page written decision, awarding Cochrane $438,000 plus interest, as well as $14,556.87 in
15 fees and expenses.

16    Now, Open Text moves to vacate the arbitration award and Cochrane petitions to confirm
17 it. Open Text argues that the arbitration award must be vacated for two independent reasons: (1)
18 the arbitrator did not have jurisdiction because the arbitration clause in the employment
19 agreement was superseded by the incentive compensation agreement and thus did not apply to the
20 dispute; and (2) the arbitrator's decision was completely irrational.

21    This order follows full briefing and oral argument.

## ANALYSIS

23    An arbitration award is immune from interference from the district court unless it falls
24 within the narrowly prescribed grounds defined under federal law. A district court may vacate an
25 arbitration award pursuant to a valid agreement to arbitrate only under a limited set of
26 circumstances: (1) where the award was procured by corruption, fraud, or undue means; (2)
27 where there was evident partiality or corruption in the arbitrator; (3) where the arbitrator was
28 guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in

3

refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrator exceeded his powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.  9 U.S.C. 10(a).

In order to obtain relief vacating a decision of an arbitrator it is not enough to show that the arbitrator committed an error, or even a serious error.  *Stolt–Nielsen S.A. v. AnimalFeeds International Corp.*, 559 U.S. 662, 671–72 (2010).  "Neither erroneous legal conclusions nor unsubstantiated factual findings justify judicial review of an arbitral award."  *Bosack v. Soward*, 586 F.2d 1096, 1102 (9th Cir. 2009).  Moreover, there is generally a "liberal federal policy favoring arbitration agreements."  *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24 (1983).  In accordance with that policy, "doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Id*. at 24–25.

The first issue this order resolves is whether the arbitrator had the authority to determine his own jurisdiction.  In *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995), the Supreme Court answered the question as to whether a court or an arbitrator has the authority to decide the arbitrability of a dispute.  *Kaplan* held that the central issue was "whether the parties objectively revealed an intent to submit the arbitrability issue to arbitration."  *Id*. at 944.

Here, the parties' employment agreement explicitly stated that arbitration would be conducted "pursuant to the American Arbitration Association's (the "AAA") rules governing commercial arbitration in effect at the time of the arbitration, except as modified herein."  The agreement did not contain any modifications regarding who would decide arbitrability.  Thus, the parties agreed that the AAA's rules would apply.  AAA's Commercial Arbitration Rule R-7 Jurisdiction stated (and still states) that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."

Moreover, the arbitrator explicitly cited to AAA Rule R-7 and found that he did have authority to rule on the scope of his jurisdiction.  He found that the employment agreement, rather

1  than the incentive compensation agreement, applied to the dispute.  Specifically, the arbitrator

2  ruled as follows (Arb. Award at 3):

> Open Text argued that Open Text's later-adopted Worldwide Incentive Compensation Policy dated July 01, 2013 ("WICP") and an Incentive Compensation Agreement ("ICA") of September 29, 2013, not Cochrane's earlier Agreement, govern the terms of his termination and separation compensation.  The arbitrator finds this argument unpersuasive.

In a recent decision, our court of appeals confronted a similar factual scenario.  In *Oracle America, Inc. v. Myriad Group A.G.*, 724 F.ed 1069, 1073 (9th Cir. 2013), "[t]he parties central dispute [was] whether incorporation of the UNCITRAL rules into the parties' arbitration provision constitute[d] clear and unmistakable evidence that the parties intended to arbitrate arbitrability."  Similar to the AAA's rules, the UNCITRAL rules stated that "[t]he arbitral tribunal shall have the power to rule on its own jurisdiction, including any objections with respect to the existence or the validity of the arbitration agreement."  UNCITRAL Arbitration Rules article 23, paragraph 1.  In answering this question, our court of appeals acknowledged that "[v]irtually every circuit to have considered the issue has determined that incorporation of the American Arbitration Association's (AAA) arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability."  In sum, *Oracle* held:

> We see no reason to deviate from the prevailing view that incorporation of the UNCITRAL arbitration rules is clear and unmistakable evidence that the parties agreed the arbitrator would decide arbitrability.  We hold that as long as an arbitration agreement is between sophisticated parties to commercial contracts, those parties shall be expected to understand that incorporation of the UNCITRAL rules delegates questions of arbitrability to the arbitrator.

*Id.* at 1074–75.  Here, by incorporating the AAA's rules into the employment agreement, the parties clearly and unmistakably agreed to submit the question of abitrability to the arbitrator.  Cochrane's arbitration demand explicitly referred to the employment agreement, and thus the arbitrator had the authority to determine his own jurisdiction under that agreement.

Open Text argues that the arbitrator did not have authority to determine his own jurisdiction under the employment agreement.  Open Text contends that the employment agreement did not apply to the calculation of Cochrane's award at all.  Instead, Open Text argues

5

Cochrane's claims, and the calculation of the variable compensation he was owed, were governed by the incentive compensation agreement, which totally and completely superceded the employment agreement. The incentive compensation agreement did not contain an arbitration clause, set forth a formula for determining employees' variable compensation, referred to by Open Text as an employee's "quantum," and provided that the Open Text compensation review board would settle variable compensation disputes.

This argument, however, is unpersuasive. Cochrane demanded arbitration under the employment agreement, which contained an arbitration clause. The arbitration clause clearly and unmistakably left it to the arbitrator to determine his own jurisdiction under the employment agreement. Open Text made this same argument — that the employment agreement did not apply to the dispute — to the arbitrator. He rejected it, determined that the employment agreement governed the dispute, that the incentive compensation agreement did not supersede the employment agreement, and that Open Text was liable to Cochrane.

Whether the employment agreement applied, and thus whether the dispute was arbitrable, was the arbitrator's call to make. As our court of appeals has held, "the arbitrator's interpretation of the scope of his powers is entitled to the same level of deference as his determination on the merits." *Schoenduve Corp. v. Lucent Technologies, Inc.*, 442 F.3d 727, 733 (9th Cir. 2006). Here, he found that the dispute was arbitrable and that was not a completely irrational decision.

The second issue is whether, after determining that he had jurisdiction, the arbitrator's award of $438,000 plus interest, as well as $14,556.87 in fees and expenses, was completely irrational. "An award is completely irrational only where the arbitration decision fails to draw its essence from the agreement. An arbitration award draws its essence from the agreement if the award is derived from the agreement, viewed in light of the agreement's language and context, as well as other indications of the parties' intentions." *Lagstein v. Certain Underwriters at Lloyd's, London*, 607 F.3d 634, 642 (9th Cir. 2010) (internal citations omitted). Moreover, the Supreme Court has held that to successfully vacate an arbitration award a movant "must clear a high hurdle. It is not enough for petitioners to show that the panel committed an error — or even a serious error. It is only when an arbitrator strays from interpretation and application of the

6

1  agreement and effectively dispenses his own brand of industrial justice that his decision may be

2  unenforceable." *Stolt-Nielsen*, 559 U.S. at 671 (internal citations omitted).

3     Here, the arbitrator's award did not fail to draw its essence from the agreement and thus

4  Open Text has not cleared the high hurdle necessary to vacate the arbitration award. The

5  arbitrator's decision stated that it was to decide three issues (Arb. Award at 1–2):

> (1) Cochrane's procedural compliance with the [employment] Agreement's notice provision and its consequences; (2) Cochrane's entitlement to [variable compensation]; and (3) if so entitled, the measure of damages, i.e., how much [variable compensation] Open Text owes him.

9  The arbitrator then proceeded to apply several sections of the employment agreement to the facts

10 of the dispute. The arbitrator applied paragraphs 4(d) and 5(b) of the employment agreement to

11 determine that Cochrane had complied with the agreement's notice requirements in resigning

12 from Open Text. He then applied paragraph 6(a)(I) of the employment agreement, titled Accrued

13 Payments, to determine whether Cochrane was entitled to variable compensation. Lastly, in

14 calculating the amount Open Text owed Cochrane, the arbitrator reviewed evidence submitted by

15 the parties regarding "annual individual and Parent Corporation performance objectives," as

16 referenced in paragraph 2(b) of the employment agreement. Based on the arbitrator's

17 interpretation and application of several sections of the employment agreement, and his reliance

18 on them in drawing his conclusion, the award was "derived from the agreement, viewed in light

19 of the agreement's language and context, as well as other indications of the parties' intentions."

20 *Lagstein*, 607 F.3d at 642.

21    In response, Open Text makes the same argument as stated above — that the incentive

22 compensation agreement, rather than the employment agreement, applied to the present the

23 dispute. Thus, Open Text argues, the arbitrator's award did not draw its essence from the

24 agreement because it applied the wrong agreement in the first place. The arbitrator, however,

25 considered this argument and dismissed it. The arbitration award stated (Arb. Award at 3):

> Coupled with this argument is Open Text's claim that the Tribunal has no authority to hear Cochrane's quantum, *i.e.*, damages calculations: the Tribunal may "decide only Claimant's entitlement to, but not quantum of any variable compensation payment." (Respondent's Pre-Hearing Brief, p. 5). Accepting Open Text's contemporaneous conclusion that the Agreement —

*United States District Court*
For the Northern District of California

>    and its arbitration provision, para. 12) — governs Cochrane's
>    termination (Sousa letter, May 2, 2014), it follows that the
>    Tribunal clearly has authority to determine both entitlement and
>    quantum.

Contrary to defendant, it would have been most impractical for the arbitrator to decide entitlement, where defendant concedes jurisdiction existed, and then to remit the parties to the company's in-house decision maker as to the amount of the bonus. The arbitrator took the practical course.

As stated above, the parties' actual agreement, and our court of appeals' precedent, dictate that the arbitrator had the authority to determine which agreement applied. He ruled that the employment agreement applied to Cochrane's termination and dispute. This decision may have been legally incorrect, but that is not the bar Open Text need overcome to vacate the arbitration award. As the undersigned judge has previously held: "Courts do not consider whether the arbitrator's finding is correct." *May v. Amgen, Inc.*, No. 12–01367, 2012 WL 2196151 at *7 (N.D. Cal. June 14, 2012). In order to prevail, Open Text must demonstrate that the arbitrator's award was completely irrational. The arbitrator, however, rationally applied the terms of the employment agreement to Cochrane's dispute. Therefore, the arbitration award must stand.

*          *          *

Employers in America have gone to considerable lengths to steer employment disputes into arbitration and away from the courts — with almost uniform backing of the case law. Every now and then, an employee will wind up prevailing anyway, as here, and the employer will regret that it too has been denied its day in court. Still, that is the state of the law in these modern times.

## CONCLUSION

For the reasons stated above, respondent's motion to vacate the arbitration award is **DENIED**. The petition to confirm the arbitration award is **GRANTED**.

**IT IS SO ORDERED.**

Dated: June 16, 2015.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

8